Argued October 10; affirmed in part and reversed in part
November 5; rehearing denied November 27, 1934

# LANE ET AL. *v.* NATIONAL INSURANCE AGENCY ET AL.

(37 P. (2d) 365)

*M. N. Eben,* of Portland, for appellants.

*E. R. Woods,* of Corvallis (J. H. Lane, of Corvallis, on the brief), for respondent.

KELLY, J. Action against defendants, National Insurance Agency, also known as National Agency, a corporation; Waucomah Farm, a corporation; National Mortgage & Bond Company, a corporation; Coast Construction Company, a corporation; and L. J. Quigley, upon 22 accounts stated assigned to plaintiffs. Defendant, Quigley, made default. The corporate defendants answered and a trial was had. From a judgment for plaintiffs against all of the defendants, the corporate defendants appeal.

From June, 1931, to February 21, 1933, defendant L. J. Quigley, and his wife, Ethel Quigley, were occupants on a farm known as Waucomah Dairy. The accounts in suit were incurred in the operation of said farm by the Quigleys. Appealing defendants urge that Mr. and Mrs. Quigley were merely tenants under two written leases, one executed on the 11th day of June, 1931, by defendant, the National Agency, a corporation, and said Quigleys, the other executed in October, 1932, by said Quigleys and defendant, Waucomah Farm, a corporation. Plaintiffs claim that said Quigleys and the corporations, named as defendants, were engaged in a joint enterprise and that the Quigleys were the agents of said corporations in relation to the transactions upon which the complaint of plaintiffs is based.

As we view the record of this appeal, it presents four questions:

First—Was it error for the trial court to admit testimony of an alleged oral agreement at variance with and contradictory of the two written leases?

Second—Is there any substantial evidence that Swart and Stratton president and vice president respectively of the corporate defendants, were authorized by said corporations or either, or any of them, to enter into a contract of joint adventure with the Quigleys or invest them with the authority of agents for said corporations in the operation and management of the farm in suit?

Third—Is there any such evidence tending to prove that the accounts in suit were stated in favor of plaintiffs' assignors?

Fourth—Does the record permit a judgment of dismissal as to the defendant with which neither plaintiffs' assignors nor the Quigleys ever had any contractual relations whatever?

Error is predicated upon the action of the trial court in permitting the introduction of evidence tending to show that before the execution of the leases an oral agreement was made by said corporations and the Quigleys by the terms of which the defendants herein were to engage in the joint enterprise of operating said farm, it being stated by Mr. Quigley, as a witness for plaintiffs, that the within leases were executed and intended merely to be shown to the board, as he expressed it—"To make it favorable to their board."

Mr. Quigley testified that he had dealings with all of the corporate defendants; that in these dealings the corporations were represented by Mr. Swart, president,

Mr. Stratton, vice president, Mr. Newcomb, secretary-treasurer, and Mr. Eben, as attorney. He also testified:

"I heard of the National Bond and Mortgage, and I also learned that they had a ranch, and I was looking for a job and I went to their office and inquired of the job and I met Mr. Swart there and he wanted to know what kind of a job I wanted. I told him particularly dairy work, and he said he had the ranch but he didn't have the dairy. * * * He wanted to know if we had any money to put in the property. I told him no, I had no money whatever, so it was very difficult for me to take the ranch and run it without any money. Then we began to plan, that is, whereby I would be put on the ranch and they would finance it, stock it and equip it."

■ In their brief and upon oral argument, appealing defendants recognized the exception to the rule that a written agreement cannot be varied or contradicted by parol evidence, by virtue of which exception the rule is not applicable to litigants, who are not parties to the written contract: *Zoharopulos v. Hamilton,* 108 Or. 201 (216 P. 184); *Bagley v. International Harvester Co.,* 99 Or. 519 (195 P. 348); *Pacific Biscuit Co. v. Dugger,* 42 Or. 513 (70 P. 523); *Smith v. Farmers & Merchants Nat. Bank,* 57 Or. 82 (110 P. 410); *Zimmerle v. Childers,* 67 Or. 465 (136 P. 349); *Robison v. Oregon-Wash. R. & N. Co.,* 90 Or. 490 (176 P. 594).

■ These defendants contend, however, that this exception does not extend to one dealing with an agent or an alleged agent. In other words, appealing defendants argue that one dealing with an agent, or an alleged agent, is bound by the same rules as the alleged agent, and that, because there was a written contract executed by the Quigleys, which could not be contradicted or varied by evidence of a prior oral agreement in litigation to which the Quigleys and the corporation executing said contract are parties; therefore, plaintiffs and their

assignors, who base their claims herein upon dealings with the Quigleys, cannot introduce evidence of such parol agreement.

The authority, which appealing defendants cite to this point, is section 48 of the Restatement of the Laws of Agency by the American Law Institute—''The rule applicable to the contradiction or alteration of an integrated contract by extrinsic evidence applies to an integrated agreement between the principal and agent as to the agent's authority.''

Comment C, which supplements said section 48, is as follows:

''Comment C. When a writing is an integrated agreement. A writing appearing to be an integration of authority may be intended to be a complete expression of the understanding of the parties as to the relations between them or it may be intended only to be shown to third persons. Whether or not such a writing is an integrated agreement as to the extent of the agent's authority depends upon the reasonable understanding of the parties as to its purpose. If it is executed primarily to be shown to third persons, it is not necessarily an integration of the agreement between principal and agent, and, if not, prior or contemporaneous extrinsic agreements between the parties as to the extent of the agent's authority may be introduced to add to it or to contradict it. This may be done by the principal in actions between him and the agent or between him and the third person, either to show that a transaction conducted by the agent was authorized in an action or was unauthorized. Such evidence may be introduced by the agent between him and the principal or between him and the third person for the purpose of showing that, although apparently not authorized on the face of the writing, he was, in fact, authorized. Likewise, a third person with whom the agent has conducted a transaction may offer such evidence to show that although the writing purported not to authorize the agent to act, the agent, in fact, had authority so to do, or that, al-

though it purported to give the agent authority he was not authorized.''

■ The concluding sentence of the foregoing quotation refutes defendants' contention.

''The rule that parol evidence is not admissible to vary the terms of a written instrument does not exclude its admission in an action between a party to an instrument and a stranger, nor between strangers, as the rule only applies to actions between the parties thereto or their privies.'' 9 Ency. of Evid. 326.

Privity has been defined as to the mutual or successive relationship to the same rights of property: 2 Bouvier's Law Dict., Rawle's Rev., p. 758. In respect to the written instruments under consideration, there is no privity between plaintiffs or plaintiffs' assignors on one hand and defendants and Mrs. Quigley on the other. In the transactions, upon which the case at bar is based, said parties were dealing at arm's length. Neither plaintiffs nor their assignors rely in any way upon the written leases or either of them, nor are they in any way bound by the terms of said leases or either of them.

No error was committed by the trial court in receiving the evidence tending to establish an oral agreement at variance with the terms of said written lease.

Mr. and Mrs. Quigley testified to the effect that written instruments were not to be effective until and unless the operation of the farm became profitable and that in the meantime they and the appealing defendants were to and did engage in a joint adventure in operating the farm and that this relationship continued until the Quigleys left the premises. The appealing defendants urge that the record is barren of any evidence tending to disclose that either or any of the appealing defendants, in their corporate capacity, ever entered into a contract of joint adventure with the Quigleys, or

that any one whomsoever was ever authorized to enter into such a contract on their behalf or on behalf of either or any of said appealing corporations.

■ A corporation may enter into such a contract: *Salem-Fairfield Tel. Ass'n. v. McMahan*, 78 Or. 477 (153 P. 788).

■ While it is true that no record was introduced in evidence showing that any officer of any of the appealing defendants was expressly authorized by the board of directors to enter into such a contract with the Quigleys, corporations act through their officers and agents and the authority of an officer of a corporation to act as a managing agent thereof may be inferred from a long continuance on the part of such officer in the performance of the duties of managing agent.

■ A contract of joint adventure need not be express; it may be implied in whole or in part from the conduct of the parties: 33 C. J. Subject, Joint Adventures, p. 847, § 19, note 22. It is not suggested that there was not a valid contract between the defendant, National Agency, and the Quigleys from the 11th day of June, 1931, until the execution of the second instrument in the form of a lease in October, 1932, nor is it suggested that there was no valid agreement between defendant, Waucomah Farm, and the Quigleys from October, 1932, to February 21, 1933. The question is as to the actual character of the agreement between the parties.

■ The rule of law that a contract of joint adventure may be implied from the conduct of the parties, permits and requires a consideration not only of the testimony directly indicating that there was such a contract, but also of the evidence which shows the course of dealing between the Quigleys and the corporations mentioned. This course of dealing is susceptible to an inference that the parties were joint adventurers. In saying this,

we do not mean that it is not also susceptible to the inference that the Quigleys were merely tenants, who were being financed and advised by the landlord. We are bound, however, by the finding of the jury upon that question.

The Quigleys dealt principally with Swart and Stratton although the record shows that at one time they contacted a Mr. Rider, who was one of the directors of said corporate defendants; that they also had some contacts with Mr. Eben, who was the attorney for said corporate defendants and that many of the checks were signed by Mr. Newcomb, secretary of the corporation issuing them.

██ Whatever the president and vice president of the corporations may have said about disregarding the terms of the written instruments would not necessarily be binding upon the corporation, unless at the time that such statements were made the officers making them had authority to enter into such an oral agreement on behalf of the corporations or the course taken by such officer in that regard was thereafter ratified by the corporations.

As to Swart and Stratton, the former was president and the latter vice president of the corporations, and they were in charge of the office of the corporations, directed the business, conducted the correspondence, advised and counseled upon innumerable occasions with the Quigleys, purchased supplies, material and livestock for the corporations, and made many trips to the farm in suit.

There is nothing in the record that any other person was the managing officer of these corporations and the record will bear no other reasonable conclusion than that Swart and Stratton were the managing officers of the National Agency, The National Mortgage & Bond Company, and the Waucomah Farm.

The president, vice president, secretary or treasurer may in effect be the general manager of the whole business or a specific part of it without regard to whether he is expressly designated as manager or whether his managerial work is recognized as a separate office or employment. In such case, his powers are not measured by the powers of a president, vice president, secretary or treasurer, but by the powers of a general manager of all or a part of the business. It is not necessary, in order that one may have the powers of a general manager, that he be denominated as such or that such an office or position exists; but it is sufficient that the corporation permits him to conduct and manage the business without objection. So it is not necessary that any resolution should be passed appointing a general manager in order to bind the corporation by the acts of an officer, who is in fact permitted or authorized to manage the business: Vol. 2, Fletcher's Cyc. of the Law of Corporations, subdiv. 3, section 666, pp. 603, 604. As such general managers of said corporations, Swart and Stratton had authority to enter into a contract of joint adventure with the Quigleys. They also had authority to constitute the Quigleys agents of said corporations in the conduct, management and operation of the farm in suit: Vol. 2, Fletcher's Cyc. of the Law of Corporations, section 667, p. 606, et seq.

As to a few of the accounts in suit, Mr. Quigley testified that he had agreed with the claimants, who are the assignors of plaintiffs, as to the amount due and had assured claimants that the same would be paid. Mrs. Quigley similarly testified as to all of the rest of the accounts in suit. Moreover, Mrs. Quigley testified that the accounts were sent to the corporate defendants and no objection thereto was made. With respect to many of them, she also testified that the company agreed to pay them. No error was committed by the

trial judge in submitting to the jury the question whether the accounts were stated or not.

Appealing defendants cite the case of *Moore v. Maxwell & Delhomme,* 155 Ala. 299 (46 So. 755). In that case, there was no pretense that the account was rendered to the defendants. Plaintiff relied merely upon an account rendered to one Biggers, who admitted its correctness. Biggers testified that the defendant gave him the authority to purchase the material but it was not suggested that defendant and Biggers were engaged in a joint adventure.

■ To avoid the foreclosure of a mortgage upon the farm in suit held by the defendant, National Agency, said farm was transferred by the mortgagor to said defendant, National Agency, which corporation was originally incorporated under the name National Insurance Agency. As stated, on June 11, 1931, a written instrument in the form of a lease was executed by the National Agency and Mr. and Mrs. Quigley. In March, 1932, the defendant, Waucomah Farm, was incorporated, and thereafter, the farm in suit was transferred to said last named defendant. Thereafter, the defendant, National Mortgage and Bond Company, loaned money to the Waucomah Farm taking a mortgage upon its property as security therefor.

The defendant, Coast Construction Company, formerly held a second mortgage upon said farm, but the same has been discharged of record.

The letters introduced in evidence herein, which were written by Swart and Stratton, are not signed by the name of any corporation. They are, however, upon stationery bearing the printed letterheads of the National Mortgage and Bond Company, National Agency and Waucomah Farm and carry the respective official designations of president and vice president respectively. Most of them are upon the stationery of the Na-

tional Mortgage and Bond Company. Defendants' exhibit 8 is a carbon copy of a letter signed National Agency by S. E. Stratton referring to a note for $188.37 enclosed therein and requesting the Quigleys to sign it. Defendants' exhibit 7 is a note in said sum wherein National Mortgage and Bond Company is named as payee and the Quigleys are the makers. Defendants' exhibit 18 is a statement of disbursements and receipts by the Quigleys disclosing a balance of $40.87 due National Mortgage and Bond Company to which is added "Amount of Payment Due 1/2/32 $188.64 with a total designated; amount of note $229.61." Defendants' Exhibit 17 is a promissory note executed by the Quigleys on January 2, 1932, in favor of National Mortgage and Bond Company in said sum of $229.61. Letters written by Mrs. Quigley are in the record, some of which are addressed to "National Bond", others to National Agency, and one at least to National Bond Co. These constitute evidence tending to prove the existence of contractual relations between the Quigleys upon one side and the three corporations mentioned upon the other. Both Mr. and Mrs. Quigley testified that the notes which they gave to the defendants were to have been returned or destroyed. This was denied by the witnesses for the corporations.

There is nothing more than Mr. Quigley's statement that he had dealings with the corporate defendant in the record tending to disclose that Mr. and Mrs. Quigley had any contractual relations with the defendant, Coast Construction Company, except inadvertent answers by counsel to questions on the part of the court during the oral argument upon appeal, which inadvertence has been formally corrected.

The question whether on this appeal the complaint may be dismissed as to this last named corporation

arises because there was no motion in the trial court for such relief. It cannot be said that the trial judge erred in reference to a question which was not submitted to him. We feel, however, that an error would be committed by this court if we should affirm the judgment against this defendant. During the oral argument, three members of the court interrogated counsel on this point. The writer can claim no credit in that respect, because he was not one of the questioners; but we cannot now disregard that phase of the record.

By the concluding sentence of Rule 12 of this court:

"The court reserves the right in furtherance of justice to notice on its own initiative a plain error of law apparent on the face of the record."

In conformity therewith, the judgment of the circuit court is reversed and a judgment of dismissal rendered as to the defendant Coast Construction Company. As to defendants, National Insurance Agency, also known as National Agency, a corporation, National Mortgage and Bond Company, and Waucomah Farm, a corporation, the judgment of the circuit court is affirmed.

It is further ordered that defendant, Coast Construction Company, recover judgment against plaintiffs herein for its proportion, namely, one-fourth of the appealing defendants' costs and disbursements upon appeal; and that in addition to the judgment rendered in the circuit court plaintiffs recover judgment herein against defendants, National Insurance Agency, also known as National Agency, a corporation, National Mortgage and Bond Company and Waucomah Farm, a corporation, for plaintiffs' costs and disbursements upon appeal.

ROSSMAN, J., not sitting.