WASSOM *v.* STATE TAX COMMISSION

Sam Kyle and Richard T. Kropp, Albany, tried the cause for plaintiffs. Sam Kyle and Willis, Kyle and Emmons, Albany, submitted briefs for plaintiffs.

Gerald F. Bartz, Assistant Attorney General, Salem, tried the cause and filed a brief for defendant.

Decision for plaintiff rendered January 31, 1964.

Addendum to decision entered March 26, 1964.

PETER M. GUNNAR, Judge.

This is a suit to set aside defendant's Opinion and Order No. I-63-2, which sustained an additional assessment of personal income taxes against plaintiffs for the calendar year 1958.

In 1958, plaintiffs owned a single unit farm, consisting of approximately 1,170 acres, in Linn County, Oregon. During that year the State of Oregon, acting through its State Highway Department, threatened to condemn an 18 acre strip of land running through plaintiffs' farm, as right-of-way for Interstate 5, a nonaccess freeway. The condemnation of this strip separated about 1,000 acres of plaintiffs' land from the remaining 150 acres upon which all the farm buildings and maintenance facilities were situated. To transport equipment to the major part of the farm after the taking and construction of the highway requires a trip of over three miles. Furthermore, the taking leaves the area containing the buildings so small as to be uneconomic in view of the number and size of the buildings. After considerable negotiation, and under the threat of condemnation, plaintiffs agreed to convey the desired strip of land to the state for $26,500.

During the negotiations the right-of-way agents of the state discussed with plaintiffs the elements of the taking and the fact that a substantial part of the price to be paid was for severance damages to the remaining land. The right-of-way supervisor made

the land price of $3,600 a part of his oral offer. After the parties orally agreed upon a total price of $26,500, the right-of-way agents presented a standard, State Highway Department, printed form of real estate option to plaintiffs for their signature. This option contained no allocation of the total consideration between the land itself and damages to the remainder. It merely provided for the payment of $26,500 for the described land, "including all damages, if any there be, by reason of the taking and use thereof, * * *." When plaintiffs sought segregation of the consideration between land and damages, the highway agents refused. They stated then, and reiterated on the witness stand, that it was, and is, a settled policy of the State Highway Department not to agree on the allocation of the contractual award. They testified that this policy is based upon a desire not to become engaged in controversies over this collateral issue and upon the further desire not to get into an allocation dispute with the federal Bureau of Public Roads, which supplies over 90 per cent of the funds for interstate highway construction.

The highway personnel testified that, in this particular taking, there could not have been any misunderstanding as to land value and that the land was worth between $200 and $250 an acre. The highway agents informed plaintiffs that, as soon as the State Highway Commission accepted the option and closed the transaction, the commission would supply to plaintiffs at their request the amounts which the commission assigned to damages and to land.

The right-of-way department presented the option to the commission, together with the right-of-way agent's analysis of land value and the amount of damages. The commission then took up the option.

On their 1958 personal state income tax returns, plaintiffs reported as the purchase price of land sold to the state the reasonable value of $2,745, or $150 an acre, and treated the remainder of the award as damages to the remaining land. After audit, defendant assessed a deficiency against plaintiffs on the basis that the entire amount received by them was the purchase price of the land taken. The commission sustained its assessment after hearing an appeal taken to it, and plaintiffs then brought this suit to set aside the commission's determination.

Defendant contends that plaintiffs cannot allocate the amount paid by the Highway Commission between land and damages, because the option, which ripened into a contract between the parties, did not segregate these elements. Plaintiffs contend that they are entitled to such segregation because, in fact, a very large part of the award was damages for depreciation of the remainder and because the Highway Department, and not plaintiffs, caused the failure to allocate by refusing to deviate from its policy of not segregating the consideration in the agreement.

■■■ This is a case of first impression in Oregon, but defendant finds support in a number of federal cases interpreting substantially the same factual and legal situation, and the federal regulations which are largely reflective of these cases. This court is not bound by federal regulations, except possibly to the extent that they are part of an Oregon statute at its adoption. *School District No. 1 v. Rushlight Co.,* 232 Or 341, 345, 375 P2d 411 (1962); *State v. Burke,* 126 Or 651, 677, 269 P 869, 270 P 756 (1921). On the other hand, federal cases and regulations interpreting a substantially identical federal statute are instruc-

tive in the interpretation of an Oregon statute. *Kuhns v. State Tax Com.*, 223 Or 547, 557, 355 P2d 249 (1960). Because in this case the federal regulations merely reflect federal cases, this court will rely on the federal decisions themselves and its own interpretation of them in the light of the case before it, rather than upon the interpretation of those cases by treasury department lawyers who dealt with differing and varying factual situations.

Most of the federal cases hold that there can be no segregation of severance damages from land purchase price if the contract or agreement between the condemnor and the condemnee is for a lump sum award. The rationale of most of these cases rests upon an application of the parol evidence rule. *Greene v. U.S.*, 3 AFTR2d 1461 (N. Dist. Ill., 1959); *Claude B. Kendall*, 31 TC 549 (1958); *O. N. Bymaster*, 20 TC 649 (1953); *Estate of Jacob Resler*, 17 TC 1085 (1952); *Marshall C. Allaben*, 35 BTA 327 (1937); *Ridge Road Investment Corp.*, P-H TC Memo § 44,070 (1944). The remainder are based upon a theory that a lump sum award represents the value of the land only, because the value of any land intrinsically includes its worth in protecting and connecting the surrounding land in the same ownership. *Lapham v. United States*, 178 F2d 994, 38 AFTR 1255 (CCA 2 1949); *Alvin S. Norby*, Dec. 24, 965 (M), 20 TCM (CCH) 1077, TC Memo 1961-219 (1961). Although it has orally argued the rationale of the *Lapham* case, *supra*, defendant relied in its brief upon the parol evidence rule in support of its adoption in this case of what it contends is the federal rule.

■ Universally, the parol evidence rule is a rule of substantive law, not a rule of evidence. *Webster v. Harris*, 189 Or 671, 678, 222 P2d 644 (1950); *Taylor*

*v. Wells,* 188 Or 648, 659, 217 P2d 236 (1950); *Marks v. Twohy Bros. Co.,* 98 Or 514, 527, 194 P 675 (1921). Under its terms parol evidence of antecedent or contemporaneous agreements of the parties may not be introduced to alter, amend, or vary the terms of a written contract which is deemed to be a complete integration of the agreement between the parties. ORS 41.740. Defendant contends that, if this court allows plaintiffs to show that their award was for damages in addition to the price for the land purchased and to make such segregation for tax purposes, it will be permitting an improper alteration of the contract between the parties in violation of the parol evidence rule.

■ However, this rule is not without its exceptions. One of its broadest exceptions permits the admission of parol evidence to show facts concerning the payment or performance of consideration. *Hurst v. Merrifield,* 144 Or 78, 90-91, 23 P2d 124 (1933); *Dodds v. Mayer,* 135 Or 43, 58, 294 P 1040 (1931). This exception does not mean that parol evidence can be introduced to alter or vary the consideration which actually is agreed upon. *Dorsey v. Tisby,* 192 Or 163, 174-9, 234 P2d 557 (1951). Another exception admits parol evidence to interpret ambiguous terms of a written contract. *Libby Creek Logging, Inc. v. Johnson,* 225 Or 336, 339, 358 P2d 491 (1960).

■ An application of these exceptions to the case at bar discloses that in this case the parol evidence rule does not preclude an allocation of the lump sum award between land price and damages. Here the contract itself is ambiguous because by its terms the payment of $26,500 was not only for land but also for "all damages, if any there be, by reason of the taking and use thereof, * * *." Even if the statement of con-

sideration in the option is not a mere recital but rather an integral term of the contract, plaintiffs do not seek by parol evidence to alter or vary but merely to explain the allocation of that consideration between the various elements being acquired for it. Although our Supreme Court has not yet had occasion to apply this facet of the consideration exception, other jurisdictions recognize that where consideration for several items is stated in the aggregate, parol evidence is admissible to show the actual allocation of consideration to each. 32 CJS 871, *Evidence,* § 948. Such a rule does no violence to the integration of the contract and does not alter or vary its terms. Instead it allows a breakdown of consideration for a purpose which was not material to the contract as integrated. It is a combination of the consideration and ambiguity exceptions.

In fact, though it is not readily apparent without a careful analysis of the cases, the federal authorities upon which the commission relies do not preclude the segregation of damages from land purchase price where, as here, damages were definitely contemplated by both parties, the land value was substantially agreed upon, and the taxpayer was willing to accept the segregation made by the condemnor. Instead the true import of the federal decisions is that allocation for tax purposes cannot be established by parol evidence if to do so would contradict the contract, if there is no proof of damages, or if the allocation was not contemplated by both parties during their negotiations. Under these circumstances the federal courts refuse to alter the contract to allow a segregation of a lump sum award.

In *Greene v. U.S., supra,* the court refused to go behind the contract itself and find the land value to

be only $500 an acre when the contract recited that the land was valued at "$1,020 per acre." In *Claude B. Kendall, supra,* the Tax Court refused to allocate part of a lump sum award to loss of business and profits on the facts of the case and because the court found that this element was probably not a part of the award. In *O. N. Bymaster, supra,* the Tax Court refused to split the lump sum between "farm" and "residential" property because it found that the condemnor had no thought of such division. In *Estate of Jacob Resler, supra,* the Tax Court refused to recognize a part of a lump sum award as rent under threat of condemnation because "At no time did the Government admit or agree that any amount was owing as rent for the period mentioned." Finally, in *Marshall C. Allaben, supra,* the leading Tax Court case and the one relied upon in *Ridge Road Investment Corp., supra,* and by the commission here, the court's refusal to segregate was based upon a finding that "this was not the way the transaction was negotiated nor the way in which it was accounted for in the state's purchase voucher, * * *."

In other cases from which the commission gains succor the same close analysis discloses the same types of distinguishing characteristics. In the frequently cited *George A. Spencer,* 33 BTA 936 (1936), the Board refused relief, not on the basis of the parol evidence rule, but because the plaintiff failed to show whether his remaining basis, against which damages were to be charged, equalled or exceeded the damages claimed or whether he had any basis in the remaining property. In *Seaside Improvement Co. v. Commissioner of Int. Rev.,* 105 F2d 990, 23 AFTR 293 (CCA 2 1939), the Second Circuit Court of Appeals refused to segregate a jury award in condemnation because

there was no evidence that there were, in fact, any severance damages. In *Alvin S. Norby, supra,* while espousing the *Lapham* rule, the Tax Court noted that there was no evidence of contemporary or prior consideration of any allocation.

Recent federal cases actually have avoided an application of the parol evidence rule to defeat allocation of lump sum awards where the existence of some severance damages is clear and an allocation was in the minds of the parties, regardless of how imperfectly, at the time they entered into the contract. In *L. A. Beeghly,* 36 TC 154 (1961), the Tax Court, without citing its earlier decisions, allowed the allocation of a condemnation award to be proved by parol evidence. In reaching this conclusion, the court said (page 156):

> "* * * It seems obvious that a large part of the amount received by the Beeghlys from the commission for their 33 acres of land was for damage to the larger amount of land not taken rather than for the value of the small amount of land actually taken. The only issue raised by the pleadings is whether as much as $16,000 of the amount received was paid and received for damage to the larger part of the farm not taken and should adjust the basis of that land. The Commissioner's contention is that nothing was paid for damage to the land not purchased. The stipulated facts do not show clearly that there was any meeting of the minds of the buyer and seller on this subject, although it was discussed in the negotiations. It is reasonably clear that severe damage was done to the retained land and that the buyer regarded at least $16,000 as having been paid on that account. It also seems fair to believe under all of the circumstances that Beeghly accepted at least this amount as payment for damages. * * *"

With a change of names and amounts, this language would be as applicable to the instant case as the Tax Court found it to be in its case.

A Federal District Court has applied the same common sense to this problem. In a delightful oral opinion, Judge Thomas J. Madden, of the U.S. District Court for New Jersey, not only allowed parol evidence to establish an allocation of a lump sum award between damages and land value, but went on to find that it was incumbent upon the court to determine exactly what damages there were when the evidence did not clearly establish a meeting of the minds on the subject. *Green, Jr. v. U.S.*, 6 AFTR2d 5431 (1960). In supporting his determination, Judge Madden quoted Mr. Justice Black in *Helvering v. F. & R. Lazarus & Co.*, 308 US 252, 255, 60 S Ct 209, 84 L ed 226, 23 AFTR 778 (1939), when he said:

> "* * * In the field of taxation, administrators of the laws and the courts are concerned with substance and realities, and formal written documents are not rigidly binding. * * *"

In the instant case plaintiffs obviously suffered very substantial damage to their remaining land because of the taking. Approximately 1,000 acres were separated by a nonaccess freeway from the remaining 150 acres upon which were located the buildings of plaintiffs' farm enterprise. The buildings were too large for the 150 acre farm. They were over three miles from the severed 1,000 acres. Livestock could not be handled in the buildings and grazed on the large pasture acreage intended for them. These and other results of the taking made the damages severe and were recognized by the right-of-way agents in their offers.

That there was a meeting of the minds about the existence of substantial severance damages is clear from the record. The value of the land was discussed and in this case one of the state right-of-way agents testified that there could not have been a misunderstanding as to the land value, even though the land value and the damages were not segregated in the option agreement.

The inescapable existence and probable amount of the severance damages not only support the allowance of their proof by parol evidence, but they also destroy the rationale of the *Lapham* and *Norby* cases, *supra*. These cases held that the parties intend a lump sum award as payment for the land itself "because what the seller actually received is what he has realized upon the disposal of it [the land conveyed] by sale." This language means that there can be no such thing as damage to the remainder, but rather that the purchase price of land itself reflects its value as protecting and connecting the adjacent land.

This *Lapham* rationale not only conflicts with the facts of this case but it also contradicts the established law of this jurisdiction. The state as a condemnor is required by our constitution and laws to pay just compensation for the property taken. What constitutes just compensation is a judicial question, not a legislative one. *Chapman v. Hood River,* 100 Or 43, 196 P 467 (1921). It can no more be altered by tax statutes than it can by eminent domain statutes. The constitution guarantees just compensation as defined by the courts. Our court has consistently held that, where a part of a tract is taken, the measure of damages for the taking is the actual, cash market value of the land condemned plus the depreciation, if any, in the value of the remaining land not

taken. *State Highway Com. v. Burk,* 200 Or 211, 248-9, 265 P2d 783 (1954). To deny the existence of an element of damage to the remainder for tax purposes, when the law of this state expressly recognizes this element as a part of a proper condemnation award and when the facts of the case so clearly establish the severity of those damages in fact, is not only illogical and unwarranted but well might render such interpretation unconstitutional.

■ Thus, this court holds that, where the evidence clearly establishes the existence of severance damages and the contemplation of them by the parties at the time they agreed on the award, the allocation of a condemnation award between land price and damages may be shown by parol evidence without violating the parol evidence rule. This holding is not in conflict with those federal decisions based upon the parol evidence rule and conforms to the Oregon decisions interpreting this rule. In so holding this court rejects the rationale of the *Lapham* and *Norby* cases, *supra,* on the grounds that they conflict with the realities of the situation and that they are contrary to the eminent domain law of this jurisdiction.

■ Whether the parol evidence rule should be invoked at all under these circumstances, where the state refused to allocate the elements of the award, presents both a legal and moral question. If we view the State Highway Department and the State Tax Commission as two different parties, then the parol evidence rule is inapplicable because it cannot be invoked by a person not a party, or in privity with a party, to the agreement. *Morey v. Redifer,* 204 Or 194, 207, 282 P2d 1062 (1955) ; *Easley v. Bottemiller,* 162 Or 90, 96, 90 P2d 481 (1939); *Lane v. National Ins. Agency,* 148 Or 589, 595, 37 P2d 365 (1934). On the other

hand, if we deem that the two commissions were merely acting as agents, in their respective spheres of competence, for the same principal, the state, then we have the state refusing to allocate the lump sum award on one hand and requiring an allocation of that award for proper tax treatment on the other. Between the two agencies the State of Oregon is whip-sawing its citizen out of his proper rights in a manner most unbecoming a sovereign. Thus, for these additional reasons the parol evidence rule should not apply in this case, either because it cannot be invoked by the Tax Commission as a stranger to the contract or because it would be unconscionable to allow the state to invoke it after having refused to allocate the contractual award.

Having determined that the award is allocable for tax purposes, the court must now determine the amount to be allocated to damages. Although plaintiffs claimed a land value of the land taken of $150 an acre, the preponderance of the evidence supports a finding that the land value was $225 an acre for the 18.3 acres taken, or $4,117.50, which we will round off at $4,125. This is the figure used by the State Highway Department. The balance of the award, $22,275, was damages to remainder, is chargeable against the plaintiffs' basis in the remaining property, and is only taxable to the extent by which it exceeds that basis, if any.

Plaintiffs shall submit a decree in conformity with this decision under Rule 32.

## ADDENDUM TO DECISION

Following entry of the decision herein, defendant moved for a clarification of the decision on the ground that it was not clear whether the part of a

jury award or contract price allocable to the taking of the land, as distinguished from damages, included land alone or land and improvements. Although the court questions the existence of an ambiguity, it adds this clarifying addendum at the request of the commission.

■ Under this decision, that part of a contract payment agreed to be paid for the land and improvements is the purchase price of that land and improvements, and the remainder is paid as damages for injury to the remaining land and improvements. When the condemnee-taxpayer accepts the breakdown made by the State Highway Commission, he can show this breakdown and assign to purchase price those highway commission accounts which represent allocations to the purchase price of land and improvements actually taken. Except for crop damage, the balance is paid as damages for injury to the remainder. Certain of the minor highway commission accounts, such as "miscellaneous," may have to be allocated.

■ The damages for injury to the remainder, so-called severance damages, go to reduce the taxpayers' adjusted basis in their remaining land and improvements. These damages, when assigned to specific items by the highway commission allocation, go to reduce the taxpayers' basis in the specific items to which they have been allocated. If the damages allocated exceed the basis of the item to which they have been allocated, the excess is taxable. Thus, if the taxpayers have a barn on their remaining land and its depreciated basis at the time of the award was $5,000, and if the highway commission allocation of the award, in which the taxpayers concurred, allotted $10,000 of the award to the restriction in use of the

barn (for making it an "overbuilt" improvement), $5,000 would be nontaxable as recovered basis and $5,000 would be taxable as income in excess of the basis.