Argued October 29, 1957, reversed and remanded April 9, 1958

# KERGIL *v.* CENTRAL OREGON FIR SUPPLY COMPANY

323 P. 2d 947

*Rupert E. Park*, Redmond, argued the cause for appellant. With him on the brief were Jos. M. Devers and Dan W. Poling, Salem.

*Robert H. Foley*, Bend, argued the cause for respondent. On the brief were DeArmond, Goodrich, Foley & Gray.

Before PERRY, Chief Justice, and ROSSMAN, BRAND, WARNER, McALLISTER and KESTER,* Justices.

PERRY, C. J.

This is an action brought by the plaintiff to recover a money judgment from the defendant. The plaintiff alleges he is the owner of certain trucks and trailers which were used to transport lumber owned by the defendant, a wholesaler of lumber; that the parties entered into written lease agreements whereby the defendant leased from the plaintiff his equipment for the transportation of its lumber and agreed to pay therefor in accordance with the terms set forth in the leases; that he has been paid some moneys, but these payments are insufficient to comply with the terms of the written leases; and he seeks to recover the balance due him.

The defendant admits the execution of the written lease agreements upon which plaintiff seeks to recover, but alleges that these written instruments were only pretended agreements and, therefore, did not create valid contracts; this because the parties had entered into a valid and binding oral agreement whereby it was agreed the plaintiff should transport defendant's lumber at an agreed price of $6 per thousand board feet, and the pretended written agreements were but sham so the plaintiff could file them with the Public Utilities Commission of Oregon and favor himself tax-wise. Therefore, the defendant having paid the plaintiff all that was due under the oral agreement, there is nothing due and owing the plaintiff.

The jury returned a verdict for the defendant and the plaintiff appeals.

The plaintiff sets forth numerous assignments of

---

* Resigned March 1, 1958.

error, some relating to the admission of evidence, some to instructions submitted by the plaintiff and rejected by the trial court, some to instructions given, and, also, failure of the trial court to sustain his motion for judgment notwithstanding the verdict of the jury, and failure to grant a new trial. Since plaintiff's meritorious assignments of error all refer to the admission of oral testimony to show the written leases were not intended contracts of the parties, we will not discuss them separately.

The defendant having admitted the execution of the written lease agreements, and seeking to avoid their effect solely on the basis of the fact that they are pretended and sham, thus admits that, if the leases are valid and do set forth the consideration for the use of the equipment of the plaintiff, any attempt to offer oral evidence of a different consideration for their use would violate the parole evidence rule set forth in ORS 41.740. *Biersdorf v. Putnam et al.*, 181 Or 522, 182 P2d 992; *Coker & Bellamy v. Richey*, 104 Or 14, 202 P 551, 204 P 945, 204 P 947, 22 ALR 744; *Muir v. Morris*, 80 Or 378, 154 P 117, 157 P 785.

Therefore, the sole basis of the defendant's defense, simply stated, is the plaintiff and defendant did not intend to create a valid lease agreement in writing for the use of plaintiff's equipment, but entered into these leases for the purpose of avoiding the payment of certain taxes which would be due and owing if the defendant engaged the plaintiff to transport its lumber as a contract carrier.

It appears from the evidence offered and the briefs of the parties that the tax sought to be evaded is not a state tax, but is a 3% Federal transport tax assessed against the shipper. This tax is to be collected by the carrier and liability is imposed upon the carrier for

collection thereof. See 26 USCA 141, Internal Revenue Code § 4291; *John J. Casale, Inc. v. Pedrick,* 72 F Supp 848. This Act has been interpreted as imposing no tax liability if the transportation of the goods and merchandise is accomplished by the shipper through the use of his own or leased equipment. *Earle v. Babler,* CA Or 1950, 180 F2d 1016. It follows, if the contract is the oral engagement as contended for by the defendant, a Federal tax liability was created; if the written leases represent the contractual relationship of the parties no tax liability exists.

Thus, the principle question is: Will the law permit consideration of oral evidence denying the validity of the written memorial of the parties when such oral evidence shows the written document was executed for the purpose of defrauding or misleading a third party?

The courts are not of a single mind upon this issue. We confess, the majority of jurisdictions at the present time, based upon pure logic, admit the evidence on the basis that such testimony is offered, not to vary the terms of the written instrument within the letter of the parole evidence rule, but only to show the parties never intended the written instrument to be a binding agreement.

The difficulty with this view is that it overlooks the moral aspects of the situation. It permits the law to be used to lend its aid to those who would mislead or defraud third parties without providing any restraining penalty upon their immoral actions. Of the majority view, the eminent Michigan law professor John E. Tracy, 33 Michigan Law Review 411 (1934-35), speaks thus:

> "A rule admitting such testimony encourages dishonest men in pursuing fraudulent practices.

> If such a man knows that he can, to his profit, with little risk to himself, deceive his neighbor by arranging to have exhibited to such neighbor a contract apparently binding but legally unenforceable, can it not be expected that he will do so? Also, would it not be equally apparent to the layman that a dishonest man, faced with certain liability on a contract which he has signed, under such a rule could always create for himself a chance of avoiding such liability by inventing testimony to show that he signed the contract only for the purpose of deceiving someone not a party to the cause? For, under the rule as laid down by the authorities, against such testimony, if believed by the jury, the court is powerless to do justice, however preposterous the court may feel it to be."

And Professor Wigmore, 9 Wigmore on Evidence 16, § 2406, states the following:

> "When the document is to serve the purpose of a mere *sham*, this principle in strictness exonerates the makers. But a just policy would seem to concede this only when the pretence is a morally justifiable one (as, to calm a lunatic or to console a dying person). When it is *morally beyond sanction*, or aims at an *evasion of the law* or a deception of other persons, by intention of the parties, that intention will not be given effect. Hence, if the *validity* of the instrument would give effect to such intention (as in usury), the instrument will not be enforced; but if the *invalidity* of the instrument would give effect to such intention, the instrument will be enforced."

At an early date the Supreme Court of Pennsylvania considered this issue in the case of *Evans v. Dravo*, 24 Pa 62, 62 Am Dec 359. In that case the plaintiff owned property sought by one Gilpin as a site for a mill. While the property was of a value of $2,500, plaintiff sold to Gilpin for $500, with bond attached signed by other parties to pay plaintiff

$2,000. When these parties were sued they testified they were not to be held liable on the bond since the only reason for its existence was that plaintiff had to have it to persuade his wife to join him in the deed. The Supreme Court held the evidence should never have been admitted, saying on page 67:

> "* * * If a plaintiff, who has been party to a fraud, has, in order to show consideration, or for other purposes of his action, to go beyond the instrument sued on, and unravel the transaction on which it was founded, he cannot have the assistance of Courts, either of equity or law; but, where the defendant has given the plaintiff perfect cause of action, by an instrument unimpeachable in itself, Courts are bound to sustain it, because they are not at liberty to presume it fraudulent, and the law forbids a confederate to prove it fraudulent. The rule is calculated to make men honest in their dealings, not only as between themselves, but in respect to the absent, the dependent, and the ignorant, and we think this a fitting case to which to apply it."

Later, in *Hendrickson v. Evans*, 25 Pa 441, the court was asked to overrule this decision upon the same facts and in sustaining its prior ruling on page 444 said:

> "The plaintiff was then and is now in possession of a legal and valid cause of action. * * * But the defendant alleges an equity which ought to restrain him, and, to make it out, is obliged to show the fraudulent transaction. In respect to that matter, the real substance of the dispute, he is the actor. He alleges and proves the fraud. This the maxim forbids him to do. * * * As to the equity relied on by him he is plaintiff in fact, whatever the forum or the position of the parties on the record."

Other courts have adopted this rule which we believe is the one most in conformity with the dictates of justice. See *Graham v. Savage*, 110 Minn 510, 126

NW 394; *Higby v. Hooper,* 124 Mont 331, 221 P2d 1043; *Supreme Lodge K. of P. v. Dalzell,* 205 Mo App 207, 223 SW 786; *Gagnon v. Fleury,* 117 Vt 382, 92 A2d 470; *Town of Grand Isle v. Kinney,* 70 Vt 381, 41 A 130. See dissent in *Hoss v. Purinton,* 229 F2d 104.

Under the facts in this case, the trial court erred in admitting testimony of another and different oral contract from that expressed by the parties in their executed written leases.

The judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion.