Argued September 9, reversed and remanded with instruc-
tions November 24, 1965, petition for rehearing
denied January 25, 1966

# CAROLINA CASUALTY INSURANCE COM-
PANY *v.* OREGON AUTOMOBILE
INSURANCE COMPANY

408 P. 2d 198

*James H. Clarke,* Portland, argued the cause for appellant. With him on the brief were Koerner, Young, McColloch & Dezendorf and John Gordon Gearin, Portland.

*Howard K. Beebe,* Portland, argued the cause for respondent. With him on the brief were Maguire, Shields, Morrison, Bailey & Kester and David C. Landis, Portland.

Before McALLISTER, Chief Justice, and PERRY, SLOAN, GOODWIN, DENECKE, HOLMAN and LUSK, Justices.

HOLMAN, J.

This is an action by one insurance company against another for contribution because of money paid to settle claims arising out of an automobile accident. Plaintiff, Carolina Casualty Insurance Company (Carolina Casualty), issued a policy of automobile liability insurance which covered as named insureds Dependable Trucking, Inc. (Dependable) and Rough

and Ready Lumber Sales, Inc. (Rough and Ready). The defendant, Oregon Automobile Insurance Company (Oregon Auto), issued a policy of automobile liability insurance covering Rough and Ready.

■ Dependable transported lumber for Rough and Ready as a common carrier. Rough and Ready had customers in California. Dependable did not have a certificate of necessity from the Interstate Commerce Commission (ICC) and therefore could not legally transport goods as a commercial carrier in interstate commerce. 49 USC §§ 303(c), 306(a), 309(a).

To avoid the ICC Regulations on California shipments Dependable ostensibly entered into a lease agreement with Rough and Ready whereby, on an individual trip basis, Dependable leased trucks to Rough and Ready for Rough and Ready's operation to California and return. Rough and Ready could haul its own material without being classed as a common carrier and thus needed no certificate of necessity.

On one of the trips to California the lumber truck became involved in an accident of serious proportions and the claimants sued both Dependable and Rough and Ready in California. Carolina Casualty put in an appearance for Dependable and Oregon Auto for Rough and Ready. On the day of trial Carolina Casualty, having insured both defendants against loss, settled all of the claims. Oregon Auto refused to contribute to these settlements claiming its insured, Rough and Ready, was not responsible to the California claimants because, despite the written lease to the contrary, the truck was being exclusively controlled and operated by Dependable at the time of the accident.

The parties at the time of the settlement entered into an agreement that (1) the sums paid were rea-

sonable, (2) Carolina Casualty, in making the payment, was not to be considered a volunteer and (3) the payment was made without prejudice to the rights of either Carolina Casualty or Oregon Auto to assert or resist a claim for contribution.

Prior to the trial the parties stipulated that the driver of the truck (Wilson) was responsible for the claimants' injuries and damages and that:

"The sole issues for determination in this proceeding herein arise from the following contentions of the parties:

"Plaintiff contends herein and defendant denies:

"1. Rough and Ready Lumber Sales, Inc., was liable to the California claimants.

"2. Rough and Ready Lumber Sales, Inc., could have been held so liable by trier of the facts in the California action and this alone is sufficient to entitle plaintiff to recover.

"Defendant contends and plaintiff denies:

"1. Rough and Ready Lumber Sales, Inc., was not liable to the California claimants for injuries caused by Wilson's negligence.

"2. If there is a question of fact on the evidence as to whether Rough and Ready Lumber Sales, Inc., was so liable for Wilson's negligence this Court must make its own determination upon the evidence of whether Rough and Ready Lumber Sales, Inc., was so liable."

The trial judge admitted parol evidence to the effect that the lease was a sham and not intended to create any legal relations between the parties thereto. From this evidence he found that the contract was a sham; that Rough and Ready had no right to control Wilson's actions; that this was the sole prerogative of Dependable; that Rough and Ready was not responsible to the California claimants; and therefore that

Carolina Casualty was not entitled to contribution from Oregon Auto.

Plaintiff contends the admission of the parol evidence was error. Plaintiff says that in determining the question as to who had the right to control Wilson the court should have received only evidence which would have been admissible in the California action. Plaintiff argues, and defendant concedes, that the admissibility of parol evidence is a matter of substance and that therefore the California court would have applied the law of Oregon in determining admissibility because this is where the contract was made. Finally, plaintiff argues that the parol evidence rule of Oregon would not have permitted Rough and Ready to introduce evidence to show the contract was a sham or to vary it.

■ Plaintiff concedes in its brief that "the single issue in this case is whether the California plaintiffs would have recovered in that action against Rough and Ready." This, of course, is a retreat from the position it adopted in the above set forth stipulation where it claimed that it was sufficient for their recovery if Rough and Ready *could* have been held liable. This retreat seems to be in conformance with the law permitting contribution by one co-insurer against another. Where the claims are settled prior to judgment the settling insurer in its case against the co-insurer must prove all the facts necessary to the claimant's recovery against the insured. 8 Appleman, Insurance Law and Practice § 4913 (1962), at page 399, states as follows:

"Where one seeks indemnity, or contribution under a coinsurance clause, for an amount voluntarily paid without waiting for judgment, he must

prove the actionable facts upon which the original liability depends as well as the reasonableness of the amount paid. \* \* \*"

Also see *Royal Indem. Co. v. American Cas. Co.,* 5 Misc 2d 533, 159 NYS2d 45 (1957); *Hawkeye-Sec. Ins. Co. v. Lowe Constr. Co.,* 251 Iowa 27, 99 NW2d 421 (1959); *New Amsterdam Cas. Co. v. Popovich,* 31 NJ Super 514, 107 A2d 345 (1954).

■ Plaintiffs' contention that the Oregon court can consider only that evidence which would have been admissible in California is sound. The Oregon court must determine if the claimants would have recovered against Rough and Ready in the California litigation. It can do this only if it considers just the evidence which was admissible there.

■ The parol evidence rule, ORS 41.740, prevents the parties to an integrated written contract from varying or contradicting the terms of the contract when litigating between themselves concerning their rights thereunder. However, parol evidence can be used to vary or contradict a contract when the litigation is between a party to the contract and a stranger thereto. *Morey v. Redifer,* 204 Or 194, 264 P2d 418, 282 P2d 1062 (1955) (dictum); *Wilkens v. Western States Groc. Co.,* 167 Or 103, 114 P2d 542 (1941); *Easley v. Bottemiller,* 162 Or 90, 90 P2d 481 (1939); *Lane v. National Ins. Agency,* 148 Or 589, 37 P2d 365 (1934); *Harris v. Schnitzer,* 146 Or 391, 27 P2d 1010 (1934); *Pacific Biscuit Co. v. Dugger,* 42 Or 513, 70 P 523 (1902); 4 Williston, Contracts § 647 (3rd ed 1961). This is true even where the evidence is offered by the party to the contract. *Pacific Biscuit Co. v. Dugger,* supra; *Robison v. Oregon-Wash. R & N Co.,* 90 Or 490, 176 P 594 (1919); *Bagley Co. v. Int. Harvester,*

99 Or 519, 195 P 348 (1921); *Commercial Sec., Inc. v. Mast,* 145 Or 394, 28 P2d 635 (1934).

Actually, the evidence admitted by the trial court did not tend to vary or contradict the contract in question. It sought to prove that the writing was no contract at all. The weight of authority elsewhere is that parol evidence is admissible to prove this even as between the parties to the contract. See cases cited in 71 ALR2d 384-388. It is admissible, according to the weight of authority, even though the contract is entered into for the purpose of deceiving a third party for the accomplishment of a morally objectionable purpose. See cases cited in 71 ALR2d 389-392.

■ We have been unable to find any Oregon decisions discussing the law where there is no morally reprehensible purpose to be accomplished by a writing not intended to have legal effect.[1] However, Oregon does not follow the weight of authority where the purpose sought to be accomplished by such a writing is morally objectionable. We follow the minority rule which says that where a written contract was entered into to accomplish a morally objectionable purpose, parol evidence that the writing was a sham will not be received. Otherwise, a court is used to aid those who would mislead or defraud third parties. *Kergil v. Central Ore. Fir Supply,* 213 Or 186, 323 P2d 947, 71 ALR 2d 378 (1958); *Mock v. Bell Motors, Inc.,* 234 Or 224, 380 P2d 922 (1963).

Plaintiff contends *Kergil* is controlling here. There plaintiff sued for rental due under a written lease of

---

[1] This type of writing, intended as a sham, should not be confused with a contract entered into on the prior understanding that it is not to become effective until the happening of a condition precedent, as in J & J Constr. Co. v. Mayernik, 241 Or 537, 407 P2d 625 (1965), and authorities discussed therein.

trucks used to transport defendant's lumber. Defendant introduced evidence that the lease was executed solely as a sham for the purpose of evading taxes and that the real contract was an oral one whereby plaintiff was hired to haul the lumber at a price less than the one provided in the written instrument. In reversing the case, the court denied the defendant the right to introduce parol evidence that the writing was not intended to affect their legal rights and, at pp 189-190, said as follows:

> "The courts are not of a single mind upon this issue. We confess, the majority of jurisdictions at the present time, based upon pure logic, admit the evidence on the basis that such testimony is offered, not to vary the terms of the written instrument within the letter of the parole [sic] evidence rule, but only to show the parties never intended the written instrument to be a binding agreement.
>
> "The difficulty with this view is that it overlooks the moral aspects of the situation. It permits the law to be used to lend its aid to those who would mislead or defraud third parties without providing any restraining penalty upon their immoral actions. Of the majority view, the eminent Michigan law professor John E. Tracy, 33 Michigan Law Review 411 (1934-35), speaks thus:
>
> " 'A rule admitting such testimony encourages dishonest men in pursuing fraudulent practices. If such a man knows that he can, to his profit, with little risk to himself, deceive his neighbor by arranging to have exhibited to such neighbor a contract apparently binding but legally unenforceable, can it not be expected that he will do so? Also, would it not be equally apparent to the layman that a dishonest man, faced with certain liability on a contract which he has signed, under such a rule could always create for himself a chance of avoiding such liability by inventing testimony to show that he signed the contract only for the purpose of

deceiving someone not a party to the cause? For, under the rule as laid down by the authorities, against such testimony, if believed by the jury, the court is powerless to do justice, however preposterous the court may feel it to be.'

And Professor Wigmore, 9 Wigmore on Evidence 16, § 2406, states the following:

" 'When the document is to serve the purpose of a mere *sham,* this principle in strictness exonerates the makers. But a just policy would seem to concede this only when the pretence is a morally justifiable one (as, to calm a lunatic or to console a dying person). When it is *morally beyond sanction,* or aims at an *evasion of the law* or a deception of other persons, by intention of the parties, that intention will not be given effect. Hence, if the *validity* of the instrument would give effect to such intention (as in usury), the instrument will not be enforced; but if the *invalidity* of the instrument would give effect to such intention, the instrument will be enforced.' "

There is a distinction between this case and *Kergil* and *Mock.* In this case the original litigation was between a party to the contract (Rough and Ready) and third parties (the California claimants), while in the Oregon cases cited the litigation was between the parties to the contract. This is a factual distinction which would not affect the proper application of the *Kergil* principle. The purpose of the *Kergil* rule is to act as a deterrent to sham contracts entered into with a morally objectionable intent to mislead third parties. The refusal to allow evidence that the contract is a sham is justified to a greater extent in this case than in *Kergil.* When the rule is applied in litigation between the parties, as in *Kergil,* the effect is that the other party to the contract—who is equally culpable—gets the benefit of having the written contract

enforced.[2] This is not so, as in the present case, where the litigation is with innocent third parties.

■ Rough and Ready could not have explained that the contract was sham had the claimants brought their action in Oregon. All parties concede that the California court was bound by Oregon rules of admissibility. In this action the Oregon trial court, in turn, could properly consider only evidence admissible in the California litigation. It therefore follows that the trial court erred in admitting parol evidence that the contract was a sham and not intended to create any legal relations between Dependable and Rough and Ready.

■ Oregon Auto contends that the court should not lend its aid to Carolina Casualty because this, in effect, enforces the illegal contract upon behalf of Dependable to whose rights Carolina Casualty was subrogated. An insurer's rights against its co-insurer for contribution arises out of the equitable doctrine which holds that one who pays money for the benefit of another is entitled to be reimbursed. *Van Winkle v. Johnson,* 11 Or 469, 471, 5 P 922, 50 Am Rep 495 (1884); *American Auto. Ins. Co. v. Seaboard Sur. Co.,* 155 Cal App2d 192, 196, 318 P2d 84 (1957); *Lamb-Weston, Inc. v. Oregon Auto. Ins. Co.,* 219 Or 110, 133-135, 341 P2d 110, 346 P2d 643, 76 ALR2d 485 (1959); 6 Appleman, Insurance Law and Practice, § 3902 (1942). Such rights do not arise by way of subrogation. Neither plaintiff nor defendant were tainted with any illegality or immorality of the contract between Dependable and Rough and Ready. They were not parties or privy to it. There is no proof they were chargeable with any knowledge of its circumstances.

---

[2] See 3 Corbin, Contracts § 577, n. 34 at 394 (1960).

■■ This is a law action. Normally it would be sent back to the trial court for retrial. However, under the Oregon Constitution, Article VII, Section 3, if this court can ascertain with certainty the judgment that should have been entered in the trial court, it is proper for this court to direct it to be entered. The result of this opinion prevents introduction of any parol evidence which shows the real agreement between Rough and Ready and Dependable. This being so, the written contract is controlling. It provides that Wilson was Rough and Ready's employee. Rough and Ready was therefore responsible in the California litigation to the claimants. Plaintiff is entitled to contribution for settlement of their claims. *Lamb-Weston, Inc. v. Oregon Auto Ins. Co.,* supra.

■ Plaintiff paid to the California claimants the sum of $86,475.64. The applicable limits of the policies issued by both plaintiff and defendant were identical. Both policies provided that the company should not be liable for a greater proportion of the loss than the applicable limit of liability bears to the total applicable limit of liability of all valid and collectible insurance. Each insurer should therefore bear one-half the loss.

■ Plaintiff also seeks contribution on its investigative and legal expenses. Plaintiff is not entitled to contribution on these expenses. This is not a case where defendant was refusing to investigate or defend. It defended its insured up to the time of the settlement by plaintiff. It therefore incurred its part of the legal and investigative expenses.

The cause is reversed and remanded to the trial court with directions to enter judgment in favor of plaintiff and against defendant in the sum of $43,237.82 together with costs and disbursements.