**EMPLOYERS CASUALTY COMPANY,**
Petitioner,

v.

**TRANSPORT INSURANCE COMPANY,**
Respondent.

No. B–1302.

Supreme Court of Texas.

July 30, 1969.

Burford, Ryburn & Ford, James H. Holmes, III, Dallas, Graves, Dougherty, Gee, Hearon, Moody & Garwood, J. Chrys Dougherty and Ben F. Vaughan, III, Austin, for petitioner.

Jackson, Walker, Winstead, Cantwell & Miller, D. L. Case and Jack Pew, Jr., Dallas, for respondent.

CALVERT, Chief Justice.

Petitioner, Employers Casualty Company, and Respondent, Transport Insurance Company, were the respective public liability insurance carriers of Prior Products, Inc., and Hunsaker Truck Lease, Inc. Prior Products leased a truck from Hunsaker that was involved in a collision with an automobile being occupied by Peter and Hazel Siegel who suffered personal injuries. The Siegels sued Prior Products. Transport denied that Prior Products was an insured under the policy issued to Hunsaker and refused a tender to defend the suit. Employers assumed defense of the suit and negotiated a settlement under which it paid the Siegels, on behalf of Prior Products, the sum of $6,750.00, and paid a fee to its own attorney in the sum of $607.50. It is not questioned that the settlement was fair and reasonable. Employers' liability limit was $300,000; that of Transport was $500,-000. Each policy had this provision, commonly called a "pro rata" or "other insurance" clause:

> "Other Insurance. If the insured has other insurance against a loss covered by this policy the company shall not be liable under this policy for a greater proportion of such loss than the applicable limit of liability stated in the declarations bears to the total applicable limit of liability of all valid and collectible insurance against such loss; * * *"

Employers sued Transport for contribution and, in response to its motion for summary judgment in the trial court, was awarded a judgment for $4,598.44, or five-eighths of the total sum of the settlement with the Siegels and its attorney's fee. Transport appealed from the summary judgment, and the court of civil appeals asserted the controlling force of Traders & General Ins. Co. v. Hicks Rubber Co., 140 Tex. 586, 169 S.W. 2d 142 (1943), under a single point of error reading as follows:

> "The trial court erred in granting Employers' Motion for Summary Judgment against Transport because, under the policies involved, Employers did not have any right to contribution from Transport and could not recover any excess payment from Transport."

On the authority of *Hicks*, the court of civil appeals reversed the judgment of the trial court and remanded the cause for trial. 434 S.W.2d 704. We affirm.

There is a difference in the facts of *Hicks* and this case in that the claim for contribution of which the court was speaking in *Hicks* was only for a pro rata part of expenses incurred in defending a suit against the insured, whereas the claim here is for a pro rata part of the sums paid in settlement of the suit against the insured and as expenses in defending the suit. This

difference in the facts is not, however, material to our decision, and we agree with the holding of the court of civil appeals that, in its present posture, this case is controlled by our decision in *Hicks*.

The rule relied upon by this court in deciding *Hicks* was taken from 29 AM.JUR. 998, Insurance § 1333, and the authorities there cited, and was announced in this language (169 S.W.2d 142, at 148):

> "It is the general rule that, if two or more insurers bind themselves to pay the entire loss insured against, and one insurer pays the whole loss, the one so paying has a right of action against his co-insurer, or coinsurers, for a ratable proportion of the amount paid by him, because he has paid a debt which is equally and concurrently due by the other insurers. On the other hand, it is also the general rule that, if each of several insurers contracts to pay such proportion of the loss as results from the destruction of the thing insured, as the amount insured by such insurer bears to the whole insurance effected on the thing insured, none of such insurers has any right to contribution from the others, nor will the payment of the whole loss by any of them discharge the liability of the others. This is because in such a case the contracts are several, and independent of each other. * * *"

Employers Casualty argues that the rule of *Hicks* is not a sound rule of decision, is contrary to the current trend of authority, and should be disapproved. We disagree.

■ The rule followed in *Hicks* is almost universally recognized as the proper rule of decision in strictly contribution cases. See 44 AM.JUR.2d 742–743, Insurance § 1818; 7 AM.JUR.2d 546, Automobile Insurance § 203; 21 A.L.R.2d 611, at 612–613; 46 C.J.S. Insurance § 1207, pp. 150–152; 8 Appleman, Insurance Law & Practice 397, § 4913; 16 Couch on Insurance 2d 568, § 62:157. The rule as stated in Couch, reads:

> "Where there are two insurers and the policies of each contains a pro rata or co-insurer clause, each insurer is liable to the insured to its proportion of the loss, and payment by one of a larger amount in no way affects the liability of the others, and gives the one so paying no right to recover the excess paid from the other insurers."

However, after stating that there is a division of authority, Couch continues (16 2d 569):

> "On the other hand, some courts refuse to follow the view stated in the preceding paragraph, on the basis that the excess part of the payment made by the prorata insurer was in effect the payment of part of the sum which the other insurer was required to pay under its policy, that by making such excess payment, the other insurer has been relieved of its liability to the extent of such payment, and that to refuse to allow contribution on the behalf of the overpaying insurer would allow the other insurer to be unjustly enriched."

Three cases are cited in support of the latter statement: Commercial Standard Ins. Co. v. American Employers Ins. Co., 209 F.2d 60 (CA 6th Cir. 1954); Continental Casualty Co. v. American Fidelity & Cas. Co., 275 F.2d 381 (CA 7th Cir. 1960), and United States Guarantee Co. v. Liberty Mut. Ins. Co., 244 Wis. 317, 12 N.W.2d 59, 150 A.L.R. 632 (1943). With due respect for the author of the Couch treatise, none of the cited cases supports the statement. All three are cases in which the paying and suing insurer was seeking recovery from a non-paying insurer in the right of the insured through contractual or conventional subrogation, and not in its own right to contribution, as is self-evident from the following quotations from the three opinions: "In the instant case, we are not concerned with legal or equitable subrogation, but with conventional subrogation, which arises from the express insurance contract entered into between the insured, Dodd, and appellant insurer, Commercial Standard Insurance

Company." 209 F.2d 65. "The short answer to all of this [voluntary payment] is that Continental's action in the instant case is not for contribution but is in subrogation under the terms of its policy. * * * This is an action governed by contractual subrogation in favor of an excess insurer against the primary insurer." 275 F.2d 385. "By the terms of its policy plaintiff was subrogated to the rights of the assured which, under the decisions, is a substitution of one person in the place of another with reference to a lawful claim or right." 12 N.W.2d 61. These three cases are also cited to us by Employers Casualty.

Other cases are cited by Employers Casualty in support of its position. As with the cases cited by Couch, none of the cited cases, decided by appellate courts, is strictly a contribution case. One, like those cited by Couch, is a contractual or conventional subrogation case. See Detroit Auto. Inter-Ins. Exch. v. Detroit Mut. Auto. Ins. Co., 337 Mich. 50, 59 N.W.2d 80 (1953). Two, are equitable subrogation cases. Continental Cas. Co. v. Zurich Ins. Co., 57 Cal.2d 27, 17 Cal.Rptr. 12, 366 P.2d 455 (1961); Employers Mut. Liab. Ins. Co. of Wis. v. Pacific Ind. Co., 167 Cal.App.2d 369, 334 P.2d 658 (1959). There is a lot of writing about contribution in Clow v. National Indemnity Co., 54 Wash.2d 198, 339 P.2d 82 (1959), but the actual holding rests on anything but contribution. The paying insurer took an agreement from the insured acknowledging payment above its pro rata part to be a loan, and suit was brought against the nonpaying insurer in the name of the insured. Recovery was allowed. The court concluded:

"We conclude that the loan agreement is entitled to be given its intended effect, to the extent of the defendant's pro rata share of the liability. Payment to Clow, of course, will extinguish Farmers' [the insurer's] right to contribution and relegate it to its contractual claim against Clow."

Our research has led us to only one case in which one pro rata insurer, paying the entire loss, was permitted to recover from another insurer strictly on a plea for contribution. See Carolina Casualty Ins. Co. v. Oregon Auto. Ins. Co., 242 Or. 407, 408 P.2d 198 (1965). Just as "one swallow does not a summer make," so one case does not a current trend of authority establish. We reject the suggestion that *Hicks* should be overruled, and we adhere to the rule there followed. The obligations of Employers Casualty and Transport were separate and independent, and they did not share a common liability. If both were liable to the insured, each was liable for only its pro rata part of the loss, and neither was liable for the other's pro rata part. The facts do not present a case for contribution. The general contribution rule is announced in 18 AM. JUR.2d 16, Contribution § 7, in this language:

"The primary requisites of the equitable right to contribution and the obligation to contribute, and the corresponding right and obligation at law, are (1) a situation wherein the parties are in aequali jure under some common obligation or burden, and (2) compulsory payment or other discharge, by the party seeking contribution, of more than his fair share of the common obligation or burden."

Not only were Employers Casualty and Transport not under a common burden, obligation or liability, but neither was the payment by Employers Casualty of the entire loss compulsory within the requirements of the rule. This requirement is stated in 18 AM.JUR.2d 24–25, Contribution § 11, as follows:

"*To entitle one co-obligor to contribution* from the others, it is the general rule that *the payment made by him must have been compulsory in the sense that he must have been under legal obligation to pay. A voluntary payment which he is not under legal obligation to make does not give a right of action against his co-obligors for contribution;* but it is sufficient if the payment is made under a legal and fixed obligation. *A payment is deemed in law*

*to be compulsory when the party making it cannot legally resist it. * * * "*[1]

■■ Employers Casualty was not, and is not, without a remedy. Its remedy for recovery from Transport of a pro rata part of the payment to the Siegels, as clearly indicated by the many cases listed above from other jurisdictions, lies in a suit asserting its right to payment through contractual or conventional subrogation to the right of the insured. See also, Southwestern Indemnity Co. v. National Surety Corp., 277 F.2d 545 (CA 5th Cir. 1960). Its policy contains the following provision:

> "Subrogation. In the event of any payment under this policy, the company shall be subrogated to all the insured's rights of recovery therefor against any person or organization and the insured shall execute and deliver instruments and papers and do whatever else is necessary to secure such rights. The insured shall do nothing after loss to prejudice such rights."

When its claim is asserted in virtue of its right of subrogation, whether its payment of more than its pro rata part of the loss was compulsory or voluntary is immaterial. This is the holding in Commercial Standard Ins. Co. v. American Employers Ins. Co., 209 F.2d 60, at 66 (CA 6th Cir. 1956) where the court said:

> "Whether the payment of the debt of another is for the purpose of protecting an interest of the one who pays the debt; whether it is paid because of a moral obligation; whether it is a payment by a volunteer—all of these considerations are irrelevant in a case of conventional subrogation."

And, if the subrogation provision in its policy does not authorize recovery by Employers Casualty from Transport of a pro rata part of the sum paid as an attorney's fee in defense of the Siegel suit, equitable subrogation does. See Continental Cas. Co. v.

Zurich Ins. Co., 57 Cal.2d 27, 17 Cal.Rptr. 12, 366 P.2d 455 (1961); Restatement of the Law of Restitution, § 162.

Employers Casualty advances two other arguments for reversing the judgment of the court of civil appeals and affirming the trial court's judgment: (1) the holding in *Hicks* was dicta and should be disregarded, and (2) its petition in this case adequately alleged a right of recovery in subrogation, particularly in light of the fact that a copy of its policy containing the subrogation provision was attached. The arguments are rejected.

■ The argument that the holding in *Hicks* was dicta rests on a contention that an examination of the record in *Hicks* discloses that the question was not properly preserved for review by the court. It is sufficient answer to the argument to say that, once this court's ruling on a question becomes final, we will not look back to the record to see if the question was properly preserved for review.

■ The second argument is based on those provisions of Rule 59, Texas Rules of Civil Procedure, that, when certain written instruments or copies thereof are attached to, filed with, or copied in a pleading, and are made a part thereof, "[s]uch pleadings shall not be deemed defective because of the lack of any allegations which can be supplied from said exhibit." There is no disposition to deem Employers Casualty's trial petition "defective". The fact is, however, that the petition did not allege a right of action in subrogation; and neither it nor the attached copy of its policy gave Transport a semblance of notice that recovery in subrogation was being sought. To the contrary, the petition alleged only a right to a "recoupment" of a pro rata part of the payment made and defense expense in accordance with the "other insurance" clauses in the policies. If Employers Casualty intended to assert a claim as subrogee of its insured, the petition did not, as required by

---

I. Emphasis ours throughout unless otherwise indicated.

Rule 47, Texas Rules of Civil Procedure, give Transport "fair notice of the claim involved." As to the necessity for pleaded notice of a subrogation claim, see American Surety Co. v. First Nat. Bank, 27 S.W.2d 890, at 891 (Tex.Civ.App.—Waco, 1930, no writ); Sherk v. First Nat. Bank, 152 S.W. 832, at 836 (Tex.Civ.App.—Amarillo, 1913) reversed on other grounds, 206 S.W. 507 (Tex.Com.App.1918).

The judgment of the court of civil appeals is affirmed.

STEAKLEY, GREENHILL and REAVLEY, JJ., dissent.

STEAKLEY, Justice (dissenting).

I respectfully dissent.

Without much ado, the majority has taken the large step of recognizing the right in subrogation of a performing pro rata liability insurer to reimbursement from its defaulting co-insurer; but as to a lesser step, has gone to great length to deny the equitable plea of contribution as an appropriate and additional remedy for enforcing the right. The stumbling block is a sweeping and somewhat summary statement in Traders & General Ins. Co. v. Hicks Rubber Co., 140 Tex. 586, 169 S.W.2d 142 (1943), and the view of the majority that the *only* remedy against the defaulting co-insurer under the circumstances here is "through contractual or conventional subrogation." The reason given for this rigid limitation is that "[t]he obligations of Employers Casualty and Transport were separate and independent, and they did not share a common liability."

We should first establish certain premises. The basic problem in the decided cases has not been subrogation versus contribution, but whether recovery is precluded in any event under the volunteer or severalty of contracts theories of defense. It does happen, as is apparent from the résumé of the cases in the majority opinion, that consideration of the problem has usually been in cases in which subrogation has been invoked. In no sense can it be said, however, that sustaining a right in subrogation when it, and it alone, has been asserted, is a denial of the additional remedy of contribution. Actually, considerable confusion in terminology is encountered in the cases and in treatises upon the problem. The term "contribution" is sometimes used interchangeably or in the sense of reimbursement or recoupment, and subrogation cases are cited as supportive of a right to contribution. In all events, however, the emphasis in granting relief, whether in subrogation or contribution, is upon the propositions that a performing insurer is not a volunteer; that a denial of contribution would unjustly enrich the defaulting insurer; and that one who pays money for the benefit of another is entitled to be reimbursed. See, as to contribution, Carolina Casualty Ins. Co. v. Oregon Auto. Ins. Co., 242 Or. 407, 408 P.2d 198 (1965); and compare Massachusetts Bonding & Ins. Co. v. Car & General Ins. Corp., 152 F.Supp 477 (D.C.Pa.1957); and Clow v. National Indemnity Co., 54 Wash.2d 198, 339 P.2d 82 (1959).

More to the point here is the decision in *Hicks* where the denial of "any recovery" [in both subrogation and contribution?] was rested upon the general rule applicable to fire insurance contracts containing proportionate loss clauses. This is evident from the opinion in which the rule is stated in terms of "destruction of the thing insured," and in the cases supporting the cited text from 29 American Jurisprudence. By its very nature, however, public liability insurance has significant and different characteristics from property insurance. For example, the Court stated in the case of Hanover Fire Ins. Co. of City of New York v. Brown, 77 Md. 64, 25 A. 989, at 991 [one of the supporting cases cited in 29 Am.Jur., relied upon in *Hicks*] that payment of the whole fire loss by one insurer would not have discharged any portion of the liability to the insured of another insurer. This is not a characteristic of liability insurance

where a discharge by one insurer of the liability of the insureds to injured third parties necessarily discharges and releases all insurers. Nor is there the moral hazard of self-injury; cf. Hardware Dealers Mutual Fire Ins. Co. v. Farmers Insurance Exchange et al., Tex., 444 S.W.2d 583, also this day decided. Notwithstanding, *Hicks* is typical of the early cases which denied recovery on the premise of the severalty and independence of the contracts. Other courts have relied less on the severalty of contracts idea and more on the theory that an insurer who pays more than his proportion of liability is a volunteer and precluded from readjusting the burden of the loss to the pro rata proportions of the policy limits. See, e.g., Farm Bureau Mut. Auto. Ins. Co. v. Buckeye Union Cas. Co., 147 Ohio St. 79, 67 N.E.2d 906 (1946).

In my opinion, *Hicks* is unsound and should be overruled. I subscribe to the view that recognizes a right to contribution where a pro rata liability insurer has paid a fair settlement under circumstances where the other insurer has refused to enter the case, or to defend the insured against suit by the injured party, or to participate in a settlement which discharges the common liability of both. Otherwise, the nonparticipating insurer is unjustly enriched and thus rewarded for dishonoring its contractual obligations. The Couch treatise states that the courts allowing contribution do so "on the basis that the excess part of the payment made by the prorata insurer was in effect the payment of part of the sum which the other insurer was required to pay under its policy, that by making such excess payment, the other insurer has been relieved of its liability to the extent of such payment, and that to refuse to allow contribution on the behalf of the overpaying insurer would allow the other insurer to be unjustly enriched." 16 Couch on Insurance 2d § 62:157, at 569 (2d ed. 1966). The

Appleman treatise speaks in this manner: "The majority of cases now recognize the undesirability of rewarding the insurer which refuses to honor its contractual obligations, and hold that payment by an insurer which properly undertakes a burden of settlement or defense does not render it a volunteer, not entitled to recover." 8 Appleman, Insurance Law and Practice § 4913, at 398 (1962).

The foregoing considerations are particularly applicable here. Transport, whose named insured was Hunsaker, originally disclaimed coverage of Prior Products, the named insured of Employers, and refused defense of the suit. It thereby thrust upon Employers potential liability for all sums which Prior Products became obligated to pay the Siegels. Proportionate liability between Employers and Transport—"valid and collectible insurance against" the loss in question, in the terms of the pro rata clause—would exist only if both insurers were on the liability risk in favor of Prior Products. Employers was obligated to defend its insured and had no alternative but to seek the discharge of its contractual liability at the lowest cost, whether by settlement or trial defense. Cf. Clow v. National Indemnity Co., supra. Surely the pro rata clauses did not require Employers to settle only a fractional part of the liability of Prior Products to the Siegels, or defend only a fractional part of the Siegels' suit, at the peril of assuming Transport's later established [1] pro rata share of liability. Nor should it be said, and the majority does not purport to say, and for good reason, that Employers was a volunteer in negotiating the settlement that discharged the common liability to Prior Products.

So, we are in agreement that since the insured has a right to enforce the pro rata obligation of each liability insurer to the maximum limits of the policy, it may prop-

---

1. Prior Products was subsequently determined to be a common insured, the trial court necessarily concluding that the Transport policy extended liability coverage to P**ior Products since it decreed that Employers was entitled to contribution from Transport. This was not challenged by Transport in its appeal from the adverse summary judgment.

erly be said that an insurer paying the entire loss is subrogated to the rights of the insured against the other. We part in the unwillingness of the majority to recognize the community of risk and obligation inherent in pro rata insurance contracts, and the fact that a performing insurer suing its risk partner for contribution under circumstances as here is also enforcing a right of its own. This is its right against the other insurer to a proportionate reduction of liability—to a readjustment of the burden of the loss—in conformity with the mutual pro rata clauses. This right is translated into one for money reimbursement upon discharge by one insurer of the common burden of liability. Compare the proration rationale in Hardware Dealers Mutual Fire Ins. Co. v. Farmers Insurance Exchange et al., Tex., 444 S.W.2d 583, this day decided. The rule of contribution is stated in 18 Am.Jur.2d, Contribution § 8, at 16, as follows:

"It is essential to the application of the principle of contribution that the party claiming contribution be in aequali jure with the others; the principle applies only in cases where the equities of the parties are equal. *This requirement is satisfied and the equities are deemed equal,* so as to give rise to the subordinate or inchoate right or obligation of contribution, *when the parties are under a common burden, obligation, or liability,* regardless of whether such common burden is one assumed by the parties through contract, one devolving upon them as co-owners of property, one imposed by statute, or one which the law imposes equally on the parties in certain classes of cases as a result of their concurring acts or *because of a community of risk.* If the burden thus assumed or imposed is one which is common to all of the parties, it is immaterial whether there is a joint, several, or joint and several liability." (Italics are added.)

The Pomeroy treatise draws these conclusions:

"'Finally, the most important doctrine, perhaps, which results from the principle, Equality is equity, is that of contribution (see § 1418) among joint debtors, co-sureties, co-contractors, and all others upon whom the same pecuniary obligation arising from contract, express or implied, rests. This doctrine is evidently based upon the notion that the burden in all such cases would be equally borne by all the persons upon whom it is imposed, and its necessary effect is to equalize that burden whenever one of the parties has, in pursuance of his mere *legal* liability, paid or been compelled to pay the whole amount, or any amount greater than his proportionate share. No more *just* doctrine is found in the entire range of equity; * * *.'" 2 Pomeroy, Equity Jurisprudence § 411, at 157–58 (5th ed. 1941).

It has been said that "[i]n insurance law the term 'contribution' has a fixed, legal meaning. It is a principle sanctioned in equity, and arises between coinsurers only, permitting one who has paid the whole loss to obtain contribution from other insurers who are also liable therefor." National Fire Ins. Co. v. Dennison, 93 Ohio St. 404, 113 N.E. 260, 262, L.R.A.1916F, 992 (Ohio 1916). It is grounded on general principles of justice not resting on contract. I perceive no convincing reason why this principle should not be applicable to pro rata liability insurers who are coinsurers of the same risk. Inherent in their respective legal obligations is a common burden, a joint interest of liability. Under circumstances of default by one, as here, the existence or not of liability of each for the entire loss should not be a determining consideration in resolving the right of a performing insurer to contribution to the extent it has paid the proportionate obligation of the other.

In the trial court, Employers moved for summary judgment upon the proposition that Prior Products was an insured under the policy issued by Transport to Hunsaker from whom Prior Products leased the truck

involved in the accident; and that, such being the case, Transport was under the obligation of defense and of pro rata satisfaction of liability from the accident in question. Transport asserted in its reply that there were issues of fact with respect to the breach by Prior Products of certain notice conditions in the policy issued to Hunsaker and in requiring the immediate forwarding of process served on Prior Products; Transport also asserted that its policy of insurance was excess insurance over the policy issued by Employers to Prior Products, if applicable at all. The trial court granted Employers' motion for summary judgment, and in so doing necessarily found that there were no genuine issues of material fact in the respects asserted by Transport. Transport in its appeal to the intermediate court did not assert by point of error or otherwise the existence of issues of fact. Its whole position there was, and here is, that, as a matter of law, Employers was not entitled to contribution from Transport. I would hold that Employers may invoke the remedy of contribution which would require an affirmance of the errorless judgment of the trial court. See Scott v. Liebman, 404 S.W.2d 288 (Tex.Sup. 1966).

GREENHILL and REAVLEY, JJ., join in this dissent.