**Jack WEBB, Special Deputy Receiver for American Eagle Insurance Company, a Texas corporation, Plaintiff–Appellee,**

v.

**NATIONAL UNION FIRE INSURANCE COMPANY OF PITTSBURGH, PA., a Pennsylvania corporation, Defendant–Appellant.**

Nos. 99–35303, 99–35645.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted March 7, 2000

Decided March 24, 2000

**580**

Thomas W. Sondag, Lane Powell Spears Lubersky, Portland, Oregon, for the defendant-appellant.

Frank C. Gibson, Eugene, Oregon, for the plaintiff-appellee.

Before GOODWIN, GRABER and FISHER, Circuit Judges.

GOODWIN, Circuit Judge:

National Union Fire Insurance Company of Pittsburgh ("National Union") appeals the district court's entry of summary judgment in favor of Jack Webb, Special Deputy Receiver for American Eagle Insurance Company ("American Eagle").

National Union contends that the district court erred in refusing to consider extrinsic evidence that allegedly would prove that American Eagle's insurance policy provided the only coverage for the plane crash at the root of this litigation. National Union further appeals the court's award of attorneys' fees to American Eagle under Or.Rev.Stat. § 742.061 (1995). We affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

In November of 1992, a Beech Baron aircraft piloted by Walter Graham crashed while en route from Medford to Baker City, Oregon, killing Graham and his three passengers. Graham had rented the plane from Southern Oregon Skyways, Inc. ("SOS"), in order to carry out an air taxi business that he operated. The entire SOS fleet of airplanes was insured by National Union but, under Graham's arrangement with SOS, he was required to maintain separate liability coverage. Graham thus contracted to purchase an American Eagle insurance policy, but the parties dispute whether this coverage was to be exclusive of, or in addition to, National Union's policy in the event of loss during his use.

American Eagle contends that both policies covered any loss to Graham and his passengers, and it points out that both policies contain "Other Insurance" clauses allowing for sharing of liability on a pro rata basis with other insurers. Therefore, it argues, National Union should be liable for contribution for the expenses that American Eagle incurred when the latter settled claims for approximately $1,000,000 following the crash. In support, American Eagle cites the express wording of Endorsement 14 of National Union's policy, which states that its coverage extends to "any person operating the aircraft under the terms of *any rental agreement* or training program which provides any remuneration to [SOS] for the use of such aircraft." (Emphasis added). Because Graham was paying rent under a sublease

for SOS's plane, American Eagle contends that National Union's policy unambiguously covered the rented aircraft. The district court viewed the situation similarly, and it held National Union responsible for contribution.

National Union counters, however, that the district court erred by failing to consider extrinsic evidence that allegedly would prove that Graham and American Eagle intended American Eagle's policy to provide the sole coverage to Graham. National Union submits that when Graham arranged to sublease the plane from SOS, its president, Monte George, explained to Graham that SOS's "insurance wouldn't cover [Graham's] air taxi business and he would have to get his own insurance on the aircraft." In addition, National Union offers the testimony of William Clark, coincidentally the insurance agent for both American Eagle and National Union. Clark would testify that his understanding of Graham's insurance plans was that American Eagle's policy was to be the only one covering Graham in this situation.

National Union thus argues that it would be inequitable to hold it liable for contribution to which it never agreed. It urges this court to consider the extrinsic evidence surrounding the formation of the insurance policies at issue here. In support, National Union states that Oregon courts may consider extrinsic evidence to determine the parties' intent when they formed a contract, even if a certain term appears unambiguous on its face. National Union further maintains that the district court's award of attorneys' fees to American Eagle was not warranted by Or.Rev. Stat. § 742.061, because that law was meant to protect insureds, and not insurers like American Eagle.

American Eagle responds that current Oregon law prohibits courts from taking into account extrinsic evidence in the case of an unambiguous contract. *See Yogman v. Parrott,* 325 Or. 358, 937 P.2d 1019 (1997). It submits that the term "any rental agreement" means just that, and therefore National Union cannot escape liability by relying on its alleged different understanding of its insurance policy. American Eagle adds that the district court made very careful findings after rejecting National Union's extrinsic evidence, upholding only some of American Eagle's claims for contribution and denying others. American Eagle also argues that the grant of attorneys' fees was justified by Or.Rev.Stat. § 742.061, because it was suing to enforce National Union's compliance under the terms of its own insurance policy. It argues that the district court's action in granting fees was directly in line with the policy advanced by the statute, which is to encourage the settlement of claims while discouraging their unreasonable rejection by insurers.

## DISCUSSION

### 1. Extrinsic Evidence

■ The parol evidence rule prohibits, as between the parties to a contract, the admission of extrinsic evidence of prior or contemporaneous agreements, whether oral or written, to explain the meaning of a contract when the parties have reduced their agreement to an unambiguous integrated writing. 11 Samuel Williston & Richard A. Lord, A Treatise on the Law of Contracts, § 33:1, at 541 (4th ed.1999) (hereinafter "Williston on Contracts"). Insurance policies are subject to the same general principles of construction as other contracts. "A policy's words and terms are construed according to 'their plain, ordinary and accepted sense in the common speech of man unless it appears from the policy that a different meaning is intended.'" *Industrial Indem. Co. v. Aetna Cas. & Sur. Co.,* 465 F.2d 934, 936 (9th Cir.1972) (citation omitted). Further, "[t]he parol evidence rule is applicable, and evidence of contemporaneous oral agreement is admissible *only to explain an ambiguity in the policy.*" *Id.* (emphasis added). Finally, if an ambiguity does in fact exist, it is to be construed against the

insurer, who has the primary duty to draft a clear and unambiguous policy. *See id.*

National Union contends, however, that Oregon and Ninth Circuit law allow district courts to evaluate parol or extrinsic evidence even in the case of an unambiguous contract. It cites *Abercrombie v. Hayden Corp.*, 320 Or. 279, 292, 883 P.2d 845 (1994), for the proposition that "[t]he trial court may consider parol and other extrinsic evidence to determine whether the terms of an agreement are ambiguous." Furthermore, National Union urges that parol evidence can be used in litigation between a party to the contract and a stranger thereto. *See Carolina Cas. Ins. Co. v. Oregon Auto. Ins. Co.*, 242 Or. 407, 408 P.2d 198 (1965); *In re XTI Xonix Techs. Inc.*, 156 B.R. 821 (Bankr.D.Or. 1993).

■ Although *Abercrombie* has not been expressly overruled, later Oregon Supreme Court and Oregon Court of Appeals cases have not followed its implication that extrinsic evidence may be considered in determining whether an ambiguity exists. Rather, the consensus among Oregon courts is that they are opposed to considering extrinsic evidence to determine the parties' intent unless an ambiguity is apparent from the four corners of the document. *See, e.g., Yogman*, 325 Or. at 361, 363–364, 937 P.2d 1019; *Roe v. Doe*, 161 Or.App. 477, 487, 984 P.2d 344 (1999) ("[I]f, but only if, an ambiguity exists, we 'examine extrinsic evidence.'" (quoting *Yogman*, 325 Or. at 363, 937 P.2d 1019)); *Crain v. Siegel*, 151 Or.App. 567, 572, 950 P.2d 382 (1997) (same). *Yogman*, which was decided after *Abercrombie*, concluded that the parol evidence rule prohibits the admission of extrinsic evidence in a case in which a contract is unambiguous. *See Yogman*, 325 Or. at 361, 937 P.2d 1019.[1]

*Carolina Casualty*, on which National Union relies, is distinguishable on its facts. There the contract involved was a subterfuge aimed solely at circumventing Interstate Commerce Commission regulations governing the trucking industry. Similarly, *XTI Xonix* was a bankruptcy case, distinguishable from the situation in which three parties to two contracts dispute overlapping insurance coverage and its apportionment in mitigating the risk of one loss.

■ This court therefore will first consider well-settled Oregon law concerning the express terms of multiple insurance policies that appear to provide overlapping coverage for the same loss. In such cases, liability is prorated according to the proportion of the policy limits to the total limits of all other policies. *See Oregon Auto. Ins. Co. v. State Acc. Ins. Fund*, 272 Or. 32, 534 P.2d 954 (1975). To allow extrinsic evidence to "prove" that National Union did not intend to be bound by its underwriting obligation on the facts of this case would introduce uncertainty into settled Oregon insurance law regarding proration of liability among co-insurers. *See Forest Indus. Ins. Exchange v. Viking Ins. Co.*, 82 Or.App. 615, 617, 728 P.2d 943 (1986); *Oregon Auto. Ins. Co. v. United States Fidelity & Guar. Co.*, 195 F.2d 958 (9th Cir.1952). Co-insurers (by virtue of there being two or more overlapping policies) could routinely attempt to introduce extrinsic evidence that would "prove" that the understanding of the parties was that their insurance policy did not provide cov-

---

1. Oregon courts also will consider the circumstances surrounding the formation of a contract; Or.Rev.Stat. § 42.220 provides:

   In construing an instrument, the circumstances under which it was made, including the situation of the subject and of the parties, may be shown so that the judge is placed in the position of those whose language the judge is interpreting.

   However, that statute does not apply, because the extrinsic evidence that National Union seeks to introduce does not relate to the circumstances under which the contract was made but, rather, consists of later statements about what the contract means.

erage even though its unambiguous terms would indicate the opposite.

Furthermore, the result we reach is in line with the strong public policy rationale supporting the exclusion of extrinsic evidence in interpreting unambiguous contract provisions. The exclusion of parol evidence reflects the "presumption that a subsequent written contract is of a higher nature than earlier statements, negotiations, or oral agreements by deeming those earlier expressions to be merged into or superseded by the written document." 11 Williston on Contracts, § 33:1, at 548. The parol evidence rule also seeks to achieve the related goal of "insuring that contracting parties, whether as a result of miscommunication, poor memory, fraud, or perjury, will not vary the terms of their written undertakings, thereby reducing the potential for litigation." *Id.* at 549–50 (footnote omitted). To allow extrinsic evidence merely because a third party to one contract tenders the evidence of intent with respect to a second contract would seriously weaken the policy behind the prohibition of such evidence in the first place.

The district court was not required to consider extrinsic evidence in determining whether National Union's policy provided coverage. The policy speaks for itself. We affirm the district court's holding that National Union is liable for contribution to American Eagle for the expenses that it incurred to settle claims.

### 2. Attorneys' Fees

Or.Rev.Stat. § 742.061 provides:

If settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon.

Here, the district court awarded attorneys' fees to American Eagle for its efforts to enforce National Union's obligation to contribute to the claims that American Eagle paid following Graham's crash.

National Union maintains, however, that the district court erred in awarding fees because the statute was intended to protect insureds, not insurers. It argues that the policy behind Or.Rev.Stat. § 742.061 is to provide a strong incentive to insurance companies to comply with their obligations to make an insured person whole. Therefore, it is aimed at those who are suing on behalf of an insured, and not for the protection of insurance companies like American Eagle. National Union relies on *Interstate Fire v. Underwriters at Lloyd's London,* 139 F.3d 1234 (9th Cir.1998), for the proposition that an insurer has no right to fees simply because a good-faith dispute with another insurer leads to litigation.

■ However, American Eagle does not seek a settlement fund reallocation like the plaintiff did in *Interstate Fire.* Rather, it is only attempting to make National Union honor its own insurance policy in the first instance, which comes within the public policy protected by Or.Rev.Stat. § 742.061. "The policy behind the statute is to encourage the settlement of claims and to discourage the unreasonable rejection of claims by insurers. If the insurer ... relies upon a mistaken theory of its legal liability, the plaintiff is entitled to a reasonable attorney fee." *Heis v. Allstate Ins. Co.,* 248 Or. 636, 643–44, 436 P.2d 550 (1968). Thus, the district court's award of attorneys' fees appears to be in line with the public policy goals of Or.Rev.Stat. § 742.061, which is designed to protect those suing on behalf of an insurance policy. After all, American Eagle filed its claim simply to ensure that National Union complied with its obligations under the latter's own insurance contract.

584

In addition, as American Eagle notes, there is nothing in the text of Or.Rev.Stat. § 742.061 that prevents insurers from receiving attorneys' fees, or that requires that only insureds can recover fees. *See, e.g., Portland Gen. Elec. Co. v. Pacific Indem. Co.,* 579 F.2d 514 (9th Cir.1978) (per curiam) (holding that an excess insurer is entitled to recover attorneys' fees from primary carrier under a subrogation theory). The text is in the passive voice, permitting fees after "an action is brought." It is not limited, for example, to the situation in which "an insured brings an action." Moreover, American Eagle points out that even judgment creditors have been awarded attorneys' fees under Or.Rev.Stat. § 742.061. *See Northwest Marine Iron Works v. Western Cas. & Sur. Co.,* 45 Or.App. 269, 608 P.2d 199 (1980). If judgment creditors may be awarded attorneys' fees, surely the district court did not err in granting American Eagle fees resulting from its efforts to enforce National Union's compliance with its insurance policy.

## CONCLUSION

We affirm the district court's holding prohibiting the introduction of extrinsic evidence unless an ambiguity already exists on the face of a contract. Additionally, the court's award of attorneys' fees to American Eagle fell within its discretion: insurers are not prohibited from receiving such awards, and the motives behind American Eagle's action are the same ones that Or. Rev.Stat. § 742.061 was intended to protect.

AFFIRMED. Costs and attorneys' fees to Appellee.